UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                               609-858-9360
United States Bankruptcy Judge

July 30, 2021

Eric Clayman, Esq.
*Counsel for Debtor*
Jenkins & Clayman
412 White Horse Pike
Audubon, NJ 08106

Erik Collazo, Esq.
Albert Russo, Esq.
*Standing Chapter 13 Trustee*
CN 4853
Trenton, NJ 08650-4853

       Re: <u>In re Michael J. Spak</u>
         Case No.: 17-20173

Dear Counsel,

  This matter is presently before the Court on the Chapter 13 Trustee's (the "Trustee") objection to the Debtor's claimed exemption under 11 U.S.C. § 522(d)(11)(E). By way of background, Michael J. Spak ("Debtor") filed this chapter 13 bankruptcy on May 17, 2017 and confirmed a plan of reorganization on February 14, 2018. The Debtor was injured as a result of a post-petition automobile accident in which his vehicle—a 2014 Black Ford Flex that the Debtor used for work as a limousine driver—was totaled.[1] The Debtor commenced a personal injury case, which resulted in settlement. In December 2020, the Debtor amended his schedules and claimed three exemptions with respect to the settlement proceeds: an exemption in the amount of

---

[1] There is some confusion as to the type of vehicle that was totaled in the accident. The Trustee describes the vehicle as a 2002 Cadillac Escalade. *See* ECF No. 108 at 4. Indeed, the Debtor's schedules list his vehicle as a 2002 Cadillac Escalade with 290,000 miles, valued at $1,000. ECF No. 19 at 4. However, in support of the instant exemption the Debtor certifies that his vehicle was a 2014 Ford Flex. *See* ECF No. 94-2 at ¶5. The Court declines to resolve this discrepancy because the precise type of vehicle that was used in the Debtor's limousine business and totaled in the accident is not dispositive of the issue as to the Debtor's entitlement to the exemption.

$23,675.00 under § 522(d)(11)(D); and exemption in the amount of $8,943.57 under § 522(d)(5); and an exemption in the amount of $22,153.20 under § 522(d)(11)(E). The Trustee does not object to the first two exemptions. Rather, it is the last claimed exemption in the amount of $22,153.20 that is at issue. With respect to this amount, the Debtor explains that after his 2014 Ford Flex was totaled, he was obligated to purchase a "substantially similar motor vehicle" (specifically, a 2015 Ford Flex) in order to continue his employment as a limousine driver. The Debtor's wife took out a loan in her name which must be repaid in monthly installments of $369.22 for 60 months, totaling $22,153.20. The Debtor asserts that this expense, which he did not have prior to the accident, cuts into his future earnings and, thus, he is entitled to an exemption under § 522(d)(11)(E). The Trustee objects.

The parties appeared before the Court on May 26, 2021, at which time the Court adjourned the matter to afford the parties additional time to consensually resolve the issue. The parties were unable to reach a resolution and came back before the Court on June 9, 2021. At that time the matter was again adjourned to July 14, 2021 to permit the parties to submit supplemental briefing. The hearing was adjourned a final time to July 28, 2021.

The Trustee's initial objection, submitted on May 3, 2021 (ECF No. 88), and again on May 16, 2021 (ECF No. 102) consisted of two sentences alleging that the Debtor had not met his burden of showing entitlement to the exemption. Thereafter, however, the Trustee submitted a supplemental brief in support of his objection. ECF No. 103. In this submission, the Trustee again asserts that the Debtor has not met his initial burden in claiming the § 522(d)(11)(E) exemption. The Trustee then elaborates and contends that the Debtor has neither provided evidence that the award was for loss of future earnings, nor established that it was reasonably necessary for the support of the debtor and any dependents. As to the "loss of future earnings," the Trustee asserts that the Court should focus on the loss of a person's earning *capacity*. Because the Debtor in this case does not appear to have a diminished capacity or a lost ability to perform the same or similar job, the Trustee concludes that the Debtor has not shown a loss of future earnings. In the Trustee's view, the new vehicle loan simply does not correspond to the type of future earnings contemplated by the statute. Moreover, the Trustee asserts that the Debtor's schedules and Plan demonstrate

that this amount is not "reasonably necessary for the support of the Debtor or his dependents" as required by the statute.

The Debtor submitted a brief, as well as certifications and other documentation, in opposition to the Trustee's objection. *See* ECF Nos. 104-107. The Trustee then filed a Reply brief. *See* ECF No. 108. The Court has considered all submissions by the parties and the arguments set forth on the record during the hearings on May 26, 2021, June 9, 2021, and July 28, 2021. For the following reasons, the Court sustains the Trustee's objection.

### I. Burden of Proof

The Court begins its analysis with a discussion on the burden of proof. In this district, there is a prima facie presumption that debtor's exemptions are properly claimed, and burden is upon objecting party to show, by preponderance of evidence, that exemption is not proper. *See In re Scotti*, 245 B.R. 17 (Bankr. D.N.J. 2000). "As the objecting party, the Trustee bears both the initial burden of production and ultimate burden of persuasion in any controversy regarding legitimacy of the Debtors' claimed exemptions." *In re Abraham*, No. 12-39700, 2014 WL 3377370, at *2 (Bankr. D.N.J. July 10, 2014) (citing Fed. R. Bankr. P. 4003(c).)

> The Trustee must produce evidence to rebut the presumptive validity of Debtors' claimed exemptions by a preponderance of the evidence. Only if the Chapter 7 Trustee produces evidence to rebut presumptive validity of Debtors' claimed exemptions does the burden shift to the Debtors to come forward with sufficient evidence to demonstrate that the exemption is proper.

*Id.* (citations omitted).

With this burden of persuasion in mind, the Court turns to the merits of the Trustee's objection and the requirements of the statute at issue.

3

## II.     Exemptions under 11 U.S.C. § 522(d)(11)(E)

Pursuant to 11 U.S.C. § 522(d)(11)(E), a debtor may exempt property acquired through a personal injury settlement "that is traceable to . . . a payment in compensation of loss of future earnings of the debtor . . . , to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."  Accordingly, this Court must decide: (1) whether the newly acquired vehicle is traceable to a payment in compensation for loss of future earnings; and (2) whether the newly acquired vehicle is "reasonably necessary for the support of the debtor" such that it is exempt under 11 U.S.C. § 522(d)(11)(E).  If either of those elements is absent, then the exemption is impermissible under § 522(d)(11)(E).

### A. Reasonably Necessary for Support

The Court begins with the second prong of the test and finds that the Trustee has demonstrated by a preponderance of the evidence that the new loan amount is not "reasonably necessary" for the support of the Debtor or his dependents.  In analyzing whether funds are reasonably necessary for support, courts consider a variety of factors, including: "1) debtor's present and anticipated living expenses; 2) debtor's present and anticipated income from all sources; 3) the age of debtor and his dependents; 4) the health of debtor and his dependents; 5) debtor's ability to earn a living; 6) debtor's job skills, training and education; 7) debtor's other assets, including exempt assets; 8) the liquidity of other assets; 9) debtor's ability to save for retirement; 10) the special needs of debtor and his dependents; and 11) debtor's continuing financial obligations, such as alimony or support payments." *In re Arellano,* 524 B.R. 615, 623 (Bankr. M.D. Pa. 2015); *see also, e.g. In re Kennedy*, 552 B.R. 183, 191 (Bankr. E.D. Tenn. 2016) (considering similar factors); *In re Bova*, 205 B.R. 467, 477 (Bankr. E.D. Pa. 1997) (same).  In considering these factors, the Trustee asserts—and the Court agrees—that the Debtor's vehicle payments do not satisfy the "reasonably necessary" prong of the statute.  The Trustee's objection finds support in the record.

First, the figures set forth in the Debtor's schedules indicate that his income and budget have not changed in any way since the case was filed in 2017.  Additionally, it appears that the

Debtor's budget includes a spousal "bonus," which was not accounted for in the original schedules. The Court considers that the Debtor has remained current and timely in payments, including during the period of time between the Debtor's accident and the acquisition of the new vehicle. This suggests that the Debtor was able to pay his expenses, at least for a short period of time, without income from his job as a limousine driver. The Court also notes that the Debtor's spouse acquired the new vehicle prior to the Debtor receiving any settlement award. This suggests that the Debtor and his spouse had the ability to afford the vehicle payments even without the § 522(d)(11)(E) exemption. Finally, the Court notes that the Trustee raises an issue in his Reply regarding the Debtor's initial schedules. Indeed, the Profit and Loss Statement submitted by the Debtor at the time he filed for bankruptcy—which was re-submitted in support of this exemption, *see* ECF No. 107—shows a "car payment" in the amount of $1,100 per month. Additionally, the Debtor's initial Schedule J lists a car payment in the amount of $301 per month. ECF No. 19 at 22, Line 17a. According to the Trustee, this car payment ended shortly after the Debtor's plan confirmed because the Debtor paid off the vehicle. Nevertheless, no amended schedules were filed to reflect this change in the Debtor's financial situation.

Counsel for the Debtor did not contest the above facts during the hearing on July 28, 2021. Further, the Debtor certified that he "did not have any automobile payments" at the time of the accident. Thus, it appears that the Debtor's Plan contemplated a $301 monthly car payment that the Debtor was not actually paying. This buttresses the Trustee's contention that an exemption of the settlement award to cover the $369.22 per month car payment is not reasonably necessary for the Debtor's support. Accordingly, the Court concludes that the Trustee has demonstrated by a preponderance of the evidence that the funds at issue are not "reasonably necessary for the support of the debtor an any dependent of the debtor" as required under § 522(d)(11)(E). The Court can sustain the Trustee's objection to the exemption on this basis alone. Nevertheless, the Court will analyze whether the proceeds of the settlement that the Debtor seeks to exempt can properly be categorized as representing compensation for "loss of future earnings."

### B. Loss of Future Earnings

The Debtor contends that the monthly car payments—payments which he did not have prior to the accident—will be paid out of his future income, resulting in a reduction, or loss, of future earnings. The Debtor's argument is premised on the notion that his vehicle and his job as a limousine driver are his sole source of income. However, the Debtor misinterprets and improperly extends the statute.

As an initial matter, the Court will assume—without finding—that the Debtor's increased car payments were contemplated during negotiation of the settlement award, and that $22,153.20 of the total settlement amount is specifically attributable to the new car expense. The Trustee disputes this contention and points out that the settlement award did not designate any amount as "loss of future earnings," or explicitly state that a portion of the settlement award was meant to compensate the Debtor for his new car payments. The Debtor's personal injury attorney certifies that he considered the new vehicle loan, among other factors, during negotiations. The Court need not resolve this issue. As stated above, the Court will assume, without finding, that the portion of the settlement award that the Debtor seeks to exempt under § 522(d)(11)(E) is attributable to the new car payments. The more significant question for this Court is whether the amount of the settlement award set aside for the new car payments constitutes "loss of future earnings" as contemplated by the exemption statute. Quite simply, such sums do not fall within the type of recovery Congress intended to include under "loss of future earnings."

From a plain meaning construction of the statute, the replacement cost of a vehicle is not—in the traditional sense—compensation for loss of future income. The commentary to § 522(d) explains that "[t]his provision . . . is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings." 11 U.S.C. § 522(d)(11) historical notes to 1978 Acts. Thus, payments for a new vehicle do not fit neatly into this category. Nevertheless, the Court understands the Debtor's argument: that he needs a new vehicle to earn a living, and that the amount he seeks to exempt is specifically intended to

compensate the Debtor for the fact that his new vehicle loan payments will cut into his future earnings.

In considering this issue further, the Court observes that there is a dearth of case law in the Third Circuit regarding what constitutes "loss of future income" for purposes of § 522(d)(11)(E). In looking to non-binding case law, the Court's own research demonstrates that a debtor may, under certain circumstances, exempt property purchased with, or traceable to, proceeds of a settlement. For example, in *In re Arellano* a debtor used settlement proceeds from a worker's compensation claim to make several purchases, including a truck. *In re Arellano,* 524 B.R. 615 (Bankr. M.D. Pa. 2015). Following an evidentiary hearing, the *In re Arellano* court held that the funds—and the property acquired with those funds—were exemptible under § 522(d)(11)(E). Additionally, the bankruptcy courts in *In re Miller*, 36 B.R. 420 (Bankr. D.N.M. 1984) and *In re Whitson*, 319 B.R. 614, 619 (Bankr. E.D. Ark. 2005) faced similar issues. In *In re Miller*, the bankruptcy court permitted a debtor's exemption in real property (a vacant lot) received as the result of a tort claim settlement. Likewise, in *In re Whitson*, the court considered the debtor's testimony that, as the result of a loss of her employment, the debtor had to move to an older mobile home and had anticipated expenses in the form of higher heating costs and upcoming repairs. The *In re Whitson* court considered these circumstances in determining that the proceeds of the debtor's personal injury settlement were compensation for lost future earnings and reasonably necessary for the debtor's support and, thus, exemptible under § 522(d)(11)(E). However, as the Trustee points out, these cases are factually distinguishable from the instant case.

In each case where a portion of settlement proceeds were deemed exemptible as "loss of future income" under § 522(d)(11)(E), the debtor was severely disabled and/or unable to return to his or her employment as the result of a personal injury. *See e.g.*, *In re Scotti*, 245 B.R. 17, 22 (Bankr. D.N.J. 2000) (permitting exemption where debtor's "poor physical condition" limited ability to work); *In re Territo*, 36 B.R. 667, 671 (Bankr. E.D.N.Y. 1984) (concluding, in the absence of any evidence to the contrary, that proceeds from a settlement could be reasonably attributed to lost earnings where debtor was unable to return to work following an accident). Thus, the focus in the cases cited by the Trustee—and in the cases discovered through the Court's own

7

research—was on the debtor's earning *capacity*. The cases cited by the Debtor do not suggest otherwise and are largely inapplicable to the facts of the Debtor's case. *See In re Clark*, 711 F.2d 21, 23 (3d Cir. 1983) (addressing a statutory exemption provision other than § 522(d)(11)(E)); *In re Smith*, 179 B.R. 437 (Bankr. E.D. Pa. 1995) (not addressing the merits of an exemption under § 522(d)(11)(E)); *In re Kobaly*, 142 B.R. 743, 751 (Bankr. W.D. Pa. 1992) (disallowing exemption in eminent domain award claimed pursuant to § 522(d)(11)(E) on several bases). Accordingly, relevant case law and commentary to the statute at issue lead this Court to conclude that loss of future earnings is tied to a debtor's diminished *capacity* or *ability* to earn.[2]

In this case, the Trustee has shown by a preponderance of the evidence that the Debtor did not lose the ability or capacity to work such that the new loan payments should be considered "loss of future earnings" under § 522(d)(11)(E). There is no evidence that the Debtor, himself, has lost the capacity or ability to work and earn a living. To the contrary, the Debtor already resumed work as a limousine driver. Further, the record does not suggest that the Debtor could not have obtained other or similar work. Thus, the Debtor here is not seeking to exempt compensation for the loss of his *ability* to work, but rather for the loss of an *instrument* used in his work. The Court declines to extend the statute to include compensation for the loss of an instrument or tool used in previous employment—even where that tool or instrument is "necessary" to resume the previous job. The Court views this type of loss as more akin to an "attendant loss," which is not included in § 522(d). Moreover, there are other exemptions for personal property found in § 522(d) which expressly exempt such assets, including, but not limited to, 11 U.S.C. § 522(d)(2) [motor vehicles], 11 U.S.C. § 522(d)(6) [tools of trade], and 11 U.S.C. § 522(d)(5) [catch-all]. Permitting a debtor to exempt

---

[2] To be clear, the Court does not now rule that loss of future earnings is tied to a "bodily injury." *See, e.g.*, *In re Lewis*, 387 Fed.Appx. 530, 531 (6th Cir.2010) ("We conclude that the legislature has not tied the loss of future earnings to a bodily injury."); *In re Arellano*, 524 B.R. at 621 ("[P]roperty traceable to a pre-petition lump sum workers' compensation settlement awarded for the loss of future earnings to the extent that the lump sum is reasonably necessary for the support of a debtor and the dependents of a debtor may be claimed as exempt."). Certainly, where a settlement explicitly designates a portion of funds as compensation for "loss of future earnings" or where a debtor receives a lump sum to compensate for an income stream—such as a workers compensation claim or a buyout option upon termination—those funds may be properly categorized as "loss of future income." However, where—as here—a personal injury settlement is not explicit and the amount in question is not direct future income stream compensation, a court must consider a debtor's ability and capacity to earn in determining whether the exempted funds constitute compensation for "loss of future income."

this type of compensation does not comport with the intent of § 522(d)(11)(E) and could open the door to a floodgate of improperly claimed exemptions under this provision.[3]

In reaching this conclusion, the Court is mindful that bankruptcy exemptions should be construed liberally in favor of debtors. *See In re Arellano,* 524 B.R. at 618*; In re Walck,* 459 B.R. 208, 211 (Bankr. M.D. Pa. 2011). Certain bankruptcy courts in this circuit have gone so far as to say that "[i]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Gaertner v. Claude (In re Claude),* 206 B.R. 374, 377 (Bankr. W.D. Pa. 1997). However, courts may not bend a statute so far in favor of a debtor so as to break it by undermining its meaning and intent.

### III.   Conclusion

For the reasons set forth above, the Court sustains the Trustee's objection to the claimed exemption. The Chapter 13 Trustee is directed to submit a form of Order consistent with this Opinion.

*Honorable Michael B. Kaplan*
United States Bankruptcy Judge

Cc:    Filed on CM/ECF

---

[3] For example, under the Debtor's theory in this case, a debtor who receives settlement proceeds from a lawsuit involving a fire that destroyed the debtor's house could claim that a portion of the settlement proceeds were meant to compensate the debtor for the cost of a new wardrobe. Because an appropriate wardrobe is "necessary" for certain employment, and because the cost of buying new clothes will inevitably eat into the debtor's future income, a debtor could claim the wardrobe compensation amount as an exemptible "loss of future earnings" under § 522(d)(11)(E).